UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ADAM SHREM,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

**MEMORANDUM DECISION AND ORDER**

26-cv-4317 (BMC)

**COGAN**, District Judge.

This Fair Credit Reporting Act case has devolved into a mini trial on the issue of whether plaintiff must submit his claims to arbitration. A trial on the issue of contract formation is set to begin on November 16, 2026. After a discovery period characterized by petty bickering and abusive discovery practices (the latter primarily by plaintiff), defendant ("Experian") has moved for reconsideration of the Court's September 23, 2026 order, which directed that the issue of contract formation be decided by jury trial.[1] For the reasons that follow, defendant's motion to compel arbitration is granted; that portion of the Court's Order setting the issue of contract-formation down for trial is vacated; and plaintiff's motion *in limine* is denied as moot.

[1] As discussed below, defendant's characterization of the motion is a misnomer because the Court has not decided the motion to compel arbitration. Rather, defendant is simply seeking to supplement the record on the motion to compel arbitration with discovery taken after the Court set the motion down for trial on the issue of whether the parties had agreed to arbitrate.

## BACKGROUND

### I. Motion to Compel Arbitration

On September 11, 2026, defendant filed a premotion conference letter expressing its intent to move to compel arbitration in this matter. The Court waived the premotion conference requirement and deemed the letter to constitute defendant's motion to compel arbitration. In short, defendant argued that plaintiff agreed to arbitrate claims against defendant when he enrolled in CreditWorks (one of defendant's products). CreditWorks' Terms of Use include an agreement to arbitrate claims arising out of or relating to a party's use of Experian's services.

Plaintiff opposed the motion and filed a declaration stating that he is not and has never been a member of CreditWorks and thus did not agree to arbitrate any claims. He also requested a jury trial on the issue of contract formation, *i.e.*, whether he had agreed to a contract containing an arbitration clause. Defendant's reply accused plaintiff of submitting a perjured declaration. The reply and accompanying declaration by corporate representative Dan Smith described evidence strongly suggesting that plaintiff is in fact an active member of CreditWorks. Plaintiff's sur-reply, which the Court granted him leave to file, addressed the potential insufficiency of defendant's evidence but did not meaningfully contend with the perjury allegations.

On September 23, 2026, the Court heard oral argument on defendant's motion to compel arbitration. Plaintiff's counsel of record, Mr. Elliot Elo, was unable to attend, and the attorney that appeared on plaintiff's behalf was unable to speak to the perjury allegations. The Court explained that, on the current record, the issue of fact – *i.e.*, the disputed issue of whether plaintiff had enrolled in CreditWorks and thus agreed to arbitrate his claims – precluded a ruling on the motion. The Court ordered plaintiff to confirm in writing whether he wished to proceed

with a jury trial on the issue of contract formation and warned plaintiff's counsel that he should ensure plaintiff's sworn statement was accurate before proceeding. Since plaintiff's counsel who attended the conference knew next to nothing about his client, the Court gave plaintiff's counsel a week to exercise due diligence given the credible allegations of perjury. However, on the same day as oral argument, plaintiff's counsel of record, Mr. Elo, confirmed plaintiff's intent to proceed with a jury trial on contract formation.

## II. Discovery on Contract Formation

The briefing on the motion to compel arbitration already suggested a contentious relationship between the parties. During discovery on contract formation, the parties' animosities have escalated. Stated briefly, the parties have sought the Court's intervention in an extraordinary amount of discovery disputes. What should have been a straightforward and narrow discovery period spiraled into a protracted and needlessly complicated series of disputes, with the parties filing positions with the Court on a near-daily basis. The Court declines to summarize all those disputes here but simply notes the following as relevant to the instant motions.

First, plaintiff has been sanctioned for obfuscating discovery. On September 27, 2026, defendant filed a discovery motion in which it complained that plaintiff had emailed a witness whom defendant had served with a subpoena and effectively advised the third party not to comply with the subpoena. The Court sanctioned plaintiff in the amount of $1,000 for this bad-faith discovery conduct and advised the parties that petty bickering would subject them to additional and escalating sanctions.[2]

---

[2] Defendant has also been sanctioned in the amount of $500 for chronic failure to comply with the Court's Individual Practice Rules.

Second, it took an unreasonable amount of effort by defendant and the Court to get plaintiff to comply with his written discovery obligations. Plaintiff refused to respond to written discovery and rested on a litany of objections without seeking relief from the Court. At a related motion for sanctions hearing on October 20, 2026 – which was rescheduled from October 14 after Mr. Elo's second failure to appear – the Court admonished the parties for failing to cooperate with each other during discovery and specifically admonished plaintiff for his obfuscatory and bad-faith behavior. The Court ordered plaintiff to respond to all written discovery by October 23 and ruled that plaintiff had waived his right to object to any of the discovery requests, yet plaintiff did not produce adequate discovery responses until defendant raised the issue with the Court again on October 28. In light of plaintiff's unexcused failure to meet a Court-ordered deadline, the Court deemed certain requests for admission admitted.

Third, the other individual that defendant sought to depose in this case, Lynn Shrem (plaintiff's wife, with whom he lives), has failed to appear for her deposition three times – on September 30, October 28, and November 4. The Court has ruled on several disputes concerning Ms. Shrem's deposition subpoenas, not all of which are relevant here. Plaintiff's counsel has repeatedly disavowed any representation of Ms. Shrem or ability to make her appear. Despite refusing to accept service on Ms. Shrem's behalf, plaintiff's counsel still raised a laundry list of objections to service on Ms. Shrem throughout the saga of defendant's attempts to serve her.

On October 30, a process server personally served Ms. Shrem with a subpoena ordering her to appear on November 4. In a prior order, the Court had authorized any service reasonably calculated to give Ms. Shrem notice of her deposition. Plaintiff confirmed at his deposition on November 3 that his wife had received the subpoena for her deposition, but he testified that he

did not know if she planned to appear. She did not appear.[3] On November 6, the Court issued an order for Ms. Shrem to show cause why she should not be held in contempt and scheduled a contempt hearing for November 12. The Court ordered the U.S. Marshal to serve Ms. Shrem with the order to show cause and further ordered plaintiff's counsel to provide a copy to plaintiff and ask plaintiff to share it with his wife. The scheduled hearing will proceed notwithstanding this decision.

Fourth, and most importantly, it took three attempts to depose plaintiff. Defendant originally noticed plaintiff's deposition for October 5, 2026, four days before discovery on contract formation was originally scheduled to end. Plaintiff's counsel refused to appear for that deposition on the grounds that service of the deposition notice was improper, yet they did not move the Court for relief and, incredibly, did not even ask their client if he was available on that date.

At the October 20 hearing, the Court ordered plaintiff's counsel to make their client available for a deposition during the week of October 26. The deposition did not happen the week of October 26. Defendant noticed plaintiff's deposition for October 29. Plaintiff moved for a protective order regarding that deposition, which the Court denied on October 27. In that order, the Court ordered plaintiff to appear for his deposition. The deposition was noticed for "9 a.m. EST". Plaintiff took the incredible position that the noticed time, which technically should have been "9 a.m. EDT" instead of "EST", meant that the deposition was scheduled to begin at 10 a.m. EDT. Rather than seek clarification on the start time (as if any was needed), plaintiff

---

[3] Ms. Shrem's nonappearance for her third deposition date is especially remarkable in light of the Court's October 27 order, which warned that her failure to comply with a properly served deposition subpoena would result in a direction to the U.S. Marshal to bring her into custody. Notably, plaintiff testified at his deposition that he was unaware of this warning, notwithstanding the fact that the Court's order indicated that sanctions would also be issued against plaintiff and his counsel if the Court found that they were willfully obstructing service of Ms. Shrem's subpoena. The Court is troubled by plaintiff's counsel's apparent lack of communication with their client.

appeared at 9:45 a.m. EDT, and plaintiff's counsel appeared at approximately 10:20 a.m. EDT (*i.e.*, late under any interpretation of the noticed time). A petty kerfuffle then ensued between plaintiff's and defendant's counsel, whereby plaintiff's counsel refused to leave the building of defendant's counsel and defendant's counsel refused to proceed with the deposition because of the tardy arrivals. The Court admonished both parties for this behavior in an order later that day.

Plaintiff was finally deposed on November 3, 2026, and the truth about plaintiff's CreditWorks membership was revealed. Plaintiff's deposition testimony was materially different from the declaration submitted with plaintiff's opposition to the motion to compel arbitration.[4] Instead of testifying that he never signed up for CreditWorks (as his declaration swore), plaintiff testified that he simply does not remember whether or not he signed up for the service. He also confirmed that he uses Experian's website to track his credit, which would have necessitated agreeing to arbitration. Throughout his deposition, plaintiff confirmed several times that he may have enrolled in CreditWorks, but he simply cannot recall one way or the other.

## III. <u>Motion for Reconsideration</u>

On November 5, defendant filed what it called a "motion for reconsideration" requesting "revision of the Court's [September 23] order directing a contract-formation trial, a finding of formation, an order compelling arbitration, and a stay under 9 U.S.C. § 3." In support, defendant argues that "[a] genuine dispute of material fact regarding contract formation no longer exists" in light of plaintiff's deposition testimony. Plaintiff filed an opposition the same day, arguing,

[4] Perhaps this is unsurprising, because plaintiff's testimony leaves reason to doubt whether he ever reviewed the declaration, which was submitted with his signature under penalty of perjury. At his deposition, plaintiff testified that he did not recognize the declaration. He then clarified that he may just not recall seeing it and "must have" seen it "[b]ecause [he] signed it." Dkt. No. 104-2 ("Shrem Dep. Rough Tr.") at 139:23-141:14. The declaration was filed less than two months before plaintiff's deposition. Although it is possible that plaintiff forgot about the declaration during that time, the Court is concerned that plaintiff's counsel may not have consulted sufficiently with their client regarding both the preparation of the declaration and the Court's warning on September 23 that plaintiff's counsel should attempt to confirm the veracity of plaintiff's statements.

among other things, that defendant's motion for reconsideration is untimely and should be denied because plaintiff has not disclaimed his declaration.

## DISCUSSION

### I. Timeliness

As a threshold issue, the Court must determine whether it should deny defendant's motion as untimely. Under Local Civil Rule 6.3, "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." However, this default rule may be modified "by the court or by statute or rule." Here, defendant's motion for reconsideration challenged the Court's order from September 23, 2026 on November 5, 2026. The reconsideration motion is obviously untimely, and plaintiff argues it should be denied on that basis.

The Court disagrees. First, despite defendant's characterization of the motion, it is more properly construed as a motion to supplement defendant's motion to compel arbitration, in which case the reconsideration rules do not apply. If anything is being reconsidered, it's this Court's scheduling order for the trial, and the Court has virtually unlimited discretion to do that. Second, there is good cause to allow an untimely motion for reconsideration in any event. Defendant's motion was prompted by plaintiff's deposition testimony, and plaintiff's deposition was taken on November 3, 2026. Defendant therefore moved the Court in a timely manner once plaintiff's deposition supplied new (and, as discussed below, dispositive) evidence. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (explaining that one of the "major grounds justifying reconsideration" is "the availability of new evidence" (citation omitted)). Additionally, if plaintiff had appeared for his deposition on the date it was first

noticed, October 5, 2026, then defendant could have moved within 14 days of the order.[5] It would be manifestly unfair to punish defendant for plaintiff's obfuscation of timely discovery. The Court therefore deems defendant's motion timely.[6] Third, by its terms, Rule 6.3 gives the Court discretion to waive its time limitations, and there sure is cause for doing that here.

## II. Contract Formation

### A. Legal Standard

"Motions to compel arbitration under section 4 are analyzed under a similar standard as motions for summary judgment," Borukh v. Experian Info. Sols., Inc., No. 24-cv-6022, 2025 WL 1220042, at *4 (E.D.N.Y. April 28, 2025), and guided by a burden-shifting framework. First, the movant "bears an initial burden of demonstrating that an agreement to arbitrate was made." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010). "This burden does not require the moving party to show initially that an agreement would be enforceable, merely that one existed." Id. The burden then shifts to the non-moving party, who must counter with "'some evidence … to substantiate [his] denial' that an agreement had been made." Barrows v. Brinker Restaurant Corp., 36 F.4th 45, 50 (2d Cir. 2022) (quoting Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972)).

Under 9 U.S.C. § 4, a party contesting the existence of a valid arbitration agreement may demand a jury trial on the issue of contract formation, but such a trial is only necessary if there is "a disputed question of material fact." Barrows, 36 F.4th at 49. To establish a genuine issue for

---

[5] Plaintiff contended that service of the October 5 deposition notice was improper, but he did not move the Court for relief. He had actual notice of the deposition and still failed to appear or seek timely relief. He therefore waived any objections to service, and his failure to appear was inexcusable.

[6] Plaintiff also takes issue with defendant's filing of a declaration in support of its motion because Local Civil Rule 6.3 provides that "[n]o party is to file an affidavit [in support of reconsideration] unless directed by the court." Given the fast-approaching trial date and the fact that the delay in bringing this motion is in large part attributable to plaintiff's discovery behavior, the Court will allow defendant's declaration.

trial, a nonmovant must make an unequivocal denial and substantiate it with some evidence. See Interocean Shipping Co., 462 F.2d at 676. Additionally, "a party's declaration will not create a material issue of fact in those rare cases where it is 'blatantly contradicted by the record, such that no reasonable jury could believe it[.]'" Barrows, 36 F.4th at 51 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

### B. Analysis

The only question before the Court is whether the parties agreed to arbitration, *i.e.*, whether plaintiff agreed to CreditWorks' Terms of Use.[7] Plaintiff's deposition testimony, unavailable to the Court when it first considered this issue, answers the question.[8] The Court holds that the parties have a valid arbitration agreement.

"[T]he fact that a party's declaration can defeat a motion to compel arbitration does not mean it always will. When a party merely states that [he] cannot *recall* signing an agreement (as opposed to *denying* [he] has done so), such a declaration ordinarily fails to create a triable issue of fact." Barrows, 36 F.4th at 51. Here, plaintiff's declaration unequivocally denied that plaintiff ever enrolled in CreditWorks, but at his deposition, plaintiff testified to the contrary that

---

[7] Plaintiff does not dispute that if he enrolled in CreditWorks and agreed to the Terms of Use, he is bound by the arbitration agreement therein. The parties also do not dispute "that the arbitration agreement delegates the issue of arbitrability to the arbitrator." Borukh, 2025 WL 1220042, at *11. Like other courts in this Circuit, the Court finds that the arbitration agreement in CreditWorks' Terms of Use includes "a clear and unmistakable delegation clause and delegates the exclusive authority to resolve all issues to the arbitrator, including the scope and enforceability of the arbitration provision." Borukh, 2025 WL 1220042, at *11; see also Chaloh v. Chrysler Capital LLC *et al.*, No. 25-cv-1675, 2026 WL 764624, at *6 (E.D.N.Y. March 18, 2026) ("[T]he issue of whether the arbitration clause applies to plaintiff's FCRA claims is an issue of scope, which has been delegated to an arbitrator by [CreditWorks' Terms of Use]."); Oestreicher v. Equifax Info. Sols. *et al.*, No. 23-cv-239, 2024 WL 1199902, at *8 (E.D.N.Y. March 20, 2024) (regarding plaintiff and defendant Experian, "the parties delegated the issue of scope to the arbitrator").

[8] Plaintiff objects to the use of the rough transcript from plaintiff's deposition because it is a draft and therefore not certified. Under the circumstances, the Court finds that the rough transcript is sufficiently reliable. This is not a case where plaintiff made one statement against his position that could theoretically change after the court reporter finalizes the transcript or plaintiff completes the errata process. Virtually all of plaintiff's testimony contradicts his declaration, and plaintiff has offered no additional evidence to substantiate his declaration.

he simply could not recall. See, e.g., Shrem Dep. Rough Tr. at 5:22-6:2 ("Q: So you just don't know if it's Experian CreditWorks that is the specific credit monitoring service that you utilize, correct? A: Correct. Q: And it could be Experian CreditWorks? A: Maybe."); id. at 7:16-24 ("Q: So you do agree that you're a member of Experian's CreditWorks credit monitoring services, correct? A: I'm not really sure what the credit monitoring service is, to be honest. I don't know what you're exactly referring to. Do I go on Experian and look at my credit? Yes. That's all I can tell you. And that's all I know. That's all I remember."); id. at 143:12-15 ("Q: You don't know whether you enrolled in CreditWorks on or about February 3, 2018, correct? A: Correct.").

Plaintiff also testified that he uses Experian.com to check his credit score. A declaration from Mr. Smith, defendant's corporate representative, which defendant submitted with its motion for reconsideration, states that "a consumer can only access their Experian credit score on Experian.com by enrolling in an [Experian Consumer Services] membership product such as CreditWorks. … Since February 3, 2018, the only way the plaintiff would have been able to check his Experian credit score on Experian.com is by logging in and accessing his existing active CreditWorks account." To this, plaintiff offers no response. Plaintiff does not, for example, contend that he enrolled in a different membership product that allows him to check his credit score on Experian.com. In fact, he testified that he does not use any other online services to check his credit. See id. at 12:8-11 ("Q: So besides Experian CreditWorks, do you utilize any other online services to check your credit? A: No.").

Plaintiff nevertheless insists that defendant's evidence "establish[es], at most, that an account in plaintiff's name exists in Experian's systems and that sessions occurred," not "who performed the February 3, 2018 enrollment, the act of assent plaintiff denies." But again,

plaintiff does not deny the act of assent; he says he cannot recall it. When asked at his deposition whether he sees "any difference … between I did not enroll and I do not remember enrolling," plaintiff testified "no, no difference." Id. at 143:24-144-2. Plaintiff's declaration, to the extent he was even involved in its preparation, was his only categorical denial, and his testimony that he discerns "no difference" between "I did not enroll" and "I do not remember enrolling" suggests that even that denial should not be ascribed its plain meaning.

Additionally, plaintiff's denial of his enrollment – which is far from unequivocal at this point – is "blatantly contradicted by the record, such that no reasonable jury could believe it." Barrows, 36 F.4th at 51 (quoting Scott, 550 U.S. at 380). A declaration submitted by Mr. Smith in support of defendant's motion to compel arbitration states that "since he enrolled in 2018, Experian sent plaintiff – as text messages to his phone – approximately 40 One Time Password ('OTP') notifications … which plaintiff then used to successfully validate possession of the device using his phone number."[9] The declaration further states "plaintiff submitted 12 disputes regarding items on his Experian credit file through his CreditWorks membership" and "on 67 occasions, plaintiff opened/clicked CreditWorks emails." Of those 67 clicks, 27 "directly resulted in [plaintiff] logging into his CreditWorks membership." Plaintiff testified that he had no reason to doubt Experian's records regarding his account activity. He also confirmed familiarity with the personal identifying information associated with the Experian account in his name, including answers to security questions. Although plaintiff testified that other people may have access to his cell phone and email at certain times, it is simply not plausible that an

[9] "Based on Smith's familiarity with the facts set forth in his declaration in connection with his duties at CreditWorks … he is competent to testify about his review of the relevant documents." Borukh, 2025 WL 1220042, at *6; see also Ellis v. Experian Info. Sols., Inc., No. 24-cv-850, 2024 WL 5319487, at *3-4 (M.D. Fla. Dec. 23, 2024) (collecting cases in which similar declarations were accepted without underlying documentation).

unknown third party is responsible for all this CreditWorks-related phone and email activity on plaintiff's devices.

If plaintiff told one story and defendant told another story, each supported by some evidence – as was the case on the pre-discovery record – it would not be appropriate for the Court to grant defendant's motion to compel by weighing the parties' "credibility or trustworthiness," Barrows, 36 F.4th at 54. But the evidence adduced during discovery reveals something different. Plaintiff's deposition testimony reveals that plaintiff's denial of enrollment in CreditWorks is really, at best, just a failure of recollection, rendering his position that there is no arbitration agreement unsupported and "blatantly contradicted by the record," id. at 51. The Court need not go to the trouble and expense of presiding over a jury trial on the issue of contract formation if a rational jury can only reach one conclusion based on the evidence. "[B]ased on the undisputed evidence that plaintiff enrolled in CreditWorks and would have had to accept the Terms of Use to complete his enrollment, Experian has established that plaintiff manifested his assent to the Terms of Use." Borukh, 2025 WL 1220042, at *9. Defendant's motion to compel arbitration is therefore granted.

## III. Request for Award of Fees and Costs

Throughout this mini trial on contract formation, defendant has made several requests for its attorneys' fees and costs incurred in the discovery process. The Court has also warned plaintiff multiple times that sanctions would be levied against him if he knowingly wasted the Court's and the parties' resources litigating this issue. Federal courts have "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). Additionally, 28 U.S.C. § 1927 allows a Court to order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to

"satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In its motion for reconsideration, defendant "seeks a schedule for a separately supported request for compensatory sanctions if the Court finds that plaintiff knowingly submitted false sworn denials to manufacture the dispute, or plaintiff's attorney failed to conduct a reasonable inquiry before drafting and submitting plaintiff's declaration[.]" Defendant seeks both its attorneys' fees and costs as "compensatory sanctions." The Court believes that the record may support a finding that plaintiff's attorney failed to conduct a reasonably inquiry regarding plaintiff's declaration, but the record does not support sanctions against plaintiff for "knowingly submit[ting] false sworn denials." Therefore, within two weeks of entry of this decision, defendant may submit a motion for its reasonable attorneys' fees and costs associated with contract-formation discovery, seeking reimbursement from plaintiff's counsel. Plaintiff's counsel shall have two weeks to respond. Both defendant and plaintiff's counsel are encouraged to consider how much their complete refusal to cooperate with one another added needless efforts and expenses; the Court will certainly consider those circumstances in determining what fees and costs were reasonably incurred.

Regardless of whether defendant is entitled to its attorneys' fees and costs for discovery on contract formation, the parties' arbitration agreement provides that defendant will pay all costs of arbitration as long as plaintiff's claim is not frivolous. The agreement also provides that each party may be entitled to recover attorneys' fees from the other party as they would in court. It will be up to the arbitrator to decide whether plaintiff's claim is frivolous and whether either party must pay the other's fees incurred during the arbitration.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration [27] is granted; defendant's motion to reconsider or supplement its motion to compel arbitration [104] is granted; the scheduling order setting trial for November 16, 2026 is vacated; and plaintiff's motion *in limine* [92] is denied as moot. The Court stays this action pending completion of arbitration. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) ("The district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). The stay will be implemented by marking this case as administratively closed, subject to reopening upon application of any party within 60 days of a final arbitral award. Plaintiff must commence arbitration within 60 days of entry of this decision, failing which the case will be dismissed.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
November 10, 2026